UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - DETROIT

IN RE:

    MCLEAN WINE CO., INC.,                    Case No. 06-50873-wsd
                                                           Chapter 7
                Debtor.                             Hon. Walter Shapero
_____/

EVANGELISTA, KAREN E.,
CHAPTER 7 TRUSTEE,

        Plaintiff,

v.                                                                                      Adv. Pro. No. 06-05828

KHN ENTERPRISES, LLC,

        Defendant.
_____/

## OPINION

This adversary proceeding is before the Court on a complaint filed by the Chapter 7 Trustee, Karen Evangelista ("Trustee"), against the defendant, KHN Enterprises, L.L.C. ("KHN"), which filed a Counterclaim against the Trustee.

### JURISDICTION

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157(a). It is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(1) and (b)(2)(B) and brought pursuant to L.B.R. 9014-1 (E.D.M.).

### BACKGROUND

On July 23, 2004, McLean Wine Co., Inc. ("Debtor"), a wholesale wine distributor, filed a voluntary petition for relief pursuant to Chapter 11 of the United States Bankruptcy Code. The Official Committee of Unsecured Creditors ("Committee") of McLean Wine Co., Inc. was appointed on August 11, 2004. On February 11, 2005, the Court entered an order instructing the U.S. Trustee to appoint a Chapter 11 Trustee on an interim basis until confirmation of a Plan of Reorganization. On March 7, 2005, Steven Midcalf was appointed as the Chapter 11 Trustee.

On April 4, 2005, the Committee filed its First Amended Combined Liquidating Plan of Reorganization and Disclosure Statement. On August 11, 2005, the Chapter 11 Trustee and the Committee filed the Joint Motion of the Interim Chapter 11 Trustee and the Official Committee of Unsecured Creditors for Entry of Order Authorizing Sale of Debtor's Assets Free and Clear of Liens, Claims, and Encumbrances Pursuant to Purchase Agreement and Approving Interim Management Agreement ("Motion to Sell"). Attached to the Motion to Sell was an Agreement for Sale and Purchase of Personal Property and Real Estate ("Purchase Agreement") executed by KHN Enterprises, L.L.C. ("KHN") as purchaser.

As part of the Purchase Agreement, KHN agreed to pay (1) $120,000.00 as the Non-Inventory component of the purchase price, plus (2) an additional amount for the wine inventory. The wine inventory purchase price was to be calculated from Seller's actual cost based upon invoices and/or other documentation in Seller's possession, excluding delivery costs, if any, with a maximum of $380,000.00. The Purchase Agreement also provided that "no Party shall be relieved or released from any liabilities or damages arising out of such Party's breach of any provision of this Agreement; provided, however, that Seller, at Seller's option, may, by written notice, declare a forfeiture and retain the deposit as liquidated damages, or may elect any other

2

remedies allowed by law." KHN paid the agreed upon $5,000.00 deposit.

Attached to the Motion to Sell was also a Management Agreement ("Agreement") executed by KHN, under which it was to act as manager pending approval by the State Liquor Control Commission of KHN as the licensee. It further provided that it "shall be effective as of the date of the Bankruptcy Court's entry on the docket of the Bankruptcy Case of an order approving this Agreement." The Court entered such an Order on September 9, 2005. The Agreement, among other things, required KHN to maintain a certain level of inventory.

No physical inventory of the wine located at the warehouse had been taken immediately prior to KHN taking over management of the Debtor's business. The Sale Order specifically provided that the Inventory Purchase Price shall be $250,000.00 plus the invoice cost of any wine prepaid by the Debtor but not yet delivered as of August 27, 2005.

KHN managed the Debtor for about a year. Difficulties arose relating to the transfer of the appropriate state liquor licenses to KHN. On or about August 3, 2006, KHN ceased managing the business and was locked out of the warehouse. On August 7, 2006, the parties agreed to entry of a Stipulation to Entry of Order Terminating Asset Purchase Agreement and Management Agreement (the order itself was apparently never entered but the parties treated the situation as if it were). James McLean and Shirley McLean performed a physical inventory of the wine at the Debtor's warehouse. They were former principals of Debtor and had operated the business from 1974 until it was sold in 1999 and thus were experienced in taking physical inventories.

The case was converted to chapter 7 by order of this court on August 21, 2006 and on August 22, 2006, Karen Evangelista was appointed the Chapter 7 Trustee.

3

DISCUSSION

A. <u>Maintenance of Wine Inventory Issue</u>

The Agreement specifically provided that KHN would "maintain inventory levels of goods and products sold by the Business (together with equipment and supplies necessary for operation of the Business) in an amount approximately equal to the inventory levels that exist at the time of this Agreement." (Exhibit 5, *Management Agreement, Paragraph 3.1*). The issue here is whether or not it did so. The Trustee claims it did not.

To dispose of that issue, the following must be established: (1) the value of the wine inventory at the time the Agreement was entered into, (2) the value of the wine inventory at the time KHN ceased management of the Debtor, and (3) whether the latter value is "approximately equal" to the former value, and if not, the extent and amount of the difference.

<u>Beginning Inventory Value</u>

As noted, prior to KHN taking over management of the Debtor's business, no physical inventory of the wine had been done. The Sale Order provided that the "Inventory Purchase Price shall be $250,000.00 plus the invoice cost of any wine prepaid by the Debtor but not yet delivered as of August 27, 2005." (Exhibit 7, *Sale Order*, paragraph 7). Essentially, the $250,000.00 appears to have been a negotiated amount, in lieu of then taking a physical inventory.

As noted, the Trustee claims that the invoice cost of wine prepaid by the Debtor but not yet delivered as of August 27, 2005 is $23,841.50, which when added to the $250,000.00, makes the total Inventory Purchase Price $273,841.50. Trustee bases this calculation on a letter, dated January 30, 2006, from the Chapter 11 Trustee to the Michigan Liquor Commission, which

stated that prepaid wine as of August 31, 2005 was $23,841.50. Midcalf, *March 26, 2008 Transcript* at 146-48, *June 10, 2008 Transcript* at 119-20. Although this letter states the value of the prepaid wine ordered in July and August 2005, it does not account for the value of wine that was delivered prior to August 27, 2005. Trustee did not provide any evidence which would tend to prove that all wine ordered in July and August 2005 was not delivered until after August 27, 2005. Therefore, Trustee has failed to prove that the total Inventory Purchase Price was in fact $273, 841.50.

KHN claims that the invoice cost of wine prepaid by the Debtor but not yet delivered as of August 27, 2005 is $11,508.50, making the total Inventory Purchase Price $261,508.50. KHN claims that prepaid wine totaling $12,333.00, which had been ordered in July 2005, had been delivered prior to August 27, 2005 and therefore, should not have been included in the total Inventory Purchase Price. Mr. McLean and Mr. Najar (on behalf of KHN) testified that the prepaid wine ordered by Debtor in July 2005 would have been delivered before August 27, 2005. J. McLean, *November 26, 2007 Transcript* at 88; Najar, *June 10, 2008 Transcript* at 152-54). Mr. Midcalf testified that the value of the prepaid wine ordered in July 2005 totaled $12,333.00. Midcalf, *June 10, 2008 Transcript* at 118. Additionally, KHN has admitted that the actual amount of prepaid wine delivered after August 27, 2005 totaled $11,508.50. (Docket No. 88, Counterstatement of Facts and Law of Defendant – *Conclusions of Law*, Paragraph 5). Therefore, this Court will accept the defendant's calculation of the total Inventory Purchase Price, which is $261,508.50.

5

### End Inventory Value

On July 29, July 30, and August 1, 2006, James McLean and Shirley McLean performed the noted physical inventory of the wine at the Debtor's warehouse. J. McLean, *November 26, 2007 Transcript* at 44, 57-58, 71-81; *March 26, 2008 Transcript* at 8-16, 38; S. McLean, *March 26, 2008 Transcript* at 44-55. Mr. and Mrs. McLean used available invoices to calculate the actual cost of most of the wine. In calculating the actual cost of the wine without an invoice, they used the industry standard markup of an average of 1.5 from the invoice price to the catalog price. J. McLean, *March 26, 2008 Transcript* at 13-14; Najar, *March 26, 2008 Transcript* at 100. Based on the physical inventory, the value of the wine inventory on August 2, 2006 was $245, 041.17. (Exhibit No. 16) S. McLean, *March 26, 2008 Transcript* at 62.

Having found Mr. and Mrs. McLean's testimony credible and their process of conducting the physical inventory reasonable and adequate, this Court will accept their August 2, 2006 inventory value of $245,041.17.

### The "Approximately Equal" Issue

The next question is whether the ending inventory value ($245,041.17) is "approximately equal" to the beginning inventory value ($261,508.50) as the Agreement required. The difference between the beginning and end inventory levels totaled $16,467.33, amounting to a 6.3% decrease. The Agreement did not define what amount of fluctuation in inventory value should be considered to be within the parameters of "approximately equal."

Webster's Dictionary defines the term "approximately" as "to come near or close, as in nature, degree, or quality." *Webster's II: New Riverside Dictionary* (1984). This definition out to be considered in the context of and together with an inquiry as to what level of inventory

fluctuation was normal with in the operation of that business, keeping in mind that in any such inventory heavy business, one would expect fluctuations within certain historically experienced parameters. Mr. McLean testified that, assuming an inventory value of $250,000.00, a monthly fluctuation of anywhere from $235,000.00 to $265,000.00 would be reasonable. J. McLean, *November 26, 2007 Transcript* at 98. Mr. McLean further testified that in cases where there are more expensive wines that came in, the fluctuation in inventory value could be higher for that particular month. J. McLean, *November 26, 2007 Transcript* at 98-99. Therefore, based on Mr. McLean's testimony, it is reasonable to expect a monthly fluctuation in inventory value of some 6%, or perhaps an even higher fluctuation if more expensive wines happened to be on hand at the time.

An inventory figure at any one time is a function of the number of units and the per unit prices. It would appear from the indicated testimony that while such may vary from month to month, over a more extended period of time, absent extraordinary changes in demand, a relatively stable inventory level was maintained to meet anticipated demand. Therefore, a 5% or 6% difference from month to month represented the normal and usual inventory pattern of this business, and, that difference could largely account for normal and usual changes from month to month in the number of units and their per unit prices. It thus makes sense that variations within those parameters could fairly circumscribe what might be considered within the concept of an approximation. Since KHN maintained the wine inventory at a level consistent with normal monthly fluctuations, this Court finds that KHN did not fail to maintain inventory value at a level "approximately equal" to the beginning inventory value. Therefore, the Trustee has failed to prove by a preponderance of the evidence that KHN breached this term of the contract.

7

06-05828-wsd    Doc 89    Filed 12/01/09    Entered 12/01/09 13:26:20    Page 7 of 9

B. <u>Return of the Deposit</u>

The Purchase Agreement provided that "no Party shall be relieved or released from any liabilities or damages arising out of such Party's breach of any provision of this Agreement; provided, however, that Seller, at Seller's option, may, <u>by written notice</u>, declare a forfeiture and retain the deposit as liquidated damages, <u>or</u> may elect any other remedies allowed by law." (Exhibit 5, Docket No. 137 –*Purchase Agreement, Paragraph 14*). KHN paid the agreed upon $5,000.00 deposit. Trustee asserts that she is entitled to retain the $5,000.00 deposit.

The quoted provision clearly gives the seller the option to (1) declare a forfeiture and retain the deposit as liquidated damages, or, in the alternative, (2) elect any other remedies at law. By instituting the present action (and even if the indicated forfeiture notice was given - and it is not clear if it was), the Plaintiff opted to pursue the "other remedies allowed at law." Having done so, Plaintiff is not entitled to now declare a forfeiture and retain the deposit as liquidated damages.

## CONCLUSION

This Court thus concludes that (1) KHN maintained inventory levels at a level approximately equal to the beginning inventory level, (2) KHN complied with, and therefore did not breach, Paragraph 3.1(d) of the Management Agreement, and (3) the Plaintiff is not entitled to retain the $5,000.00 deposit.

KHN shall prepare and present an appropriate order.

**Signed on December 01, 2009**

                                               /s/ Walter Shapero
                                        **Walter Shapero**
                                        **United States Bankruptcy Judge**